Approved: _____
MARGUERITE B. COLSON
Assistant United States Attorney

Before:   THE HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

**20 MAG 10388**

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

JOSE MARTINEZ,
   a/k/a "Miguel Martinez,"

and

MARIO DE LA ROSA

   Defendants.

- - - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1951, 924(c)(1)(A), and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    STEVEN SAINT HILAIRE, being duly sworn, deposes and says that he is a Detective with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") / New York City Police Department ("NYPD") Joint Robbery Task Force, and charges as follows:

COUNT ONE
(Hobbs Act Robbery Conspiracy)

    1. From on or about August 7, 2020 up to and including on or about August 28, 2020, in the Southern District of New York and elsewhere, JOSE MARTINEZ, a/k/a "Miguel Martinez," and MARIO DE LA ROSA, the defendants, knowingly did conspire with others, known and unknown, to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to

wit, MARTINEZ and DE LA ROSA conspired to rob commercial establishments in New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
(Hobbs Act Robbery)

2. On or about August 7, 2020, in the Southern District of New York and elsewhere, JOSE MARTINEZ, a/k/a "Miguel Martinez," and MARIO DE LA ROSA, the defendants, did knowingly commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, MARTINEZ and DE LA ROSA robbed at gunpoint a grocery store on East Broadway in New York, New York, taking cash, and an employee's cellphone.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT THREE
(Hobbs Act Robbery)

3. On or about August 28, 2020, in the Southern District of New York and elsewhere, JOSE MARTINEZ, a/k/a "Miguel Martinez," and MARIO DE LA ROSA, the defendants, did knowingly commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, MARTINEZ and DE LA ROSA robbed at gunpoint a grocery store on Avenue A in New York, New York, taking cash, a cellphone, ear phones, and a watch.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT FOUR
(Brandishing a Firearm in Furtherance of Hobbs Act Robbery)

4. On or about August 28, 2020, in the Southern District of New York and elsewhere, JOSE MARTINEZ, a/k/a "Miguel Martinez," and MARIO DE LA ROSA, the defendants, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count Three of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, and did aid and abet the use, carrying, and possession of

a firearm, which was brandished, during the robbery charged in Count Three of this Complaint.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), (ii) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5.   I am a Detective with the ATF/NYPD Joint Robbery Task Force, and I have been personally involved in this investigation.  This affidavit is based on my investigation, my conversations with other law enforcement agents, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Grocery Store-1 Robbery

6.   Based on my conversations with other law enforcement officers and my review of New York City Police Department complaint reports, I have learned the following:

   a.   On or about Friday, August 7, 2020, at approximately 7:00 p.m., two men ("Perpetrator-1 and "Perpetrator-2") entered a small grocery store located on East Broadway in New York, New York ("Grocery Store-1").

   b.   Upon entry, Perpetrator-1 grabbed the store owner ("the Owner") by the Owner's shoulder and pushed the Owner toward the wall and chair where the Owner's friend (the "Friend") was sitting. Perpetrator-1 then displayed a black firearm, pointing it toward the Owner and the Friend and demanding money. Perpetrator-1 took a cellphone and cash from the Friend.

   c.   Meanwhile, Perpetrator-2 went behind the counter of Grocery Store-1 and removed cash from a paper box containing the earnings of Grocery Store-1.

   d.   Perpetrator-1 then ordered the Friend into the rear room of Grocery Store-1, where he demanded the Friend lie face down. Perpetrator-1 then joined the Friend in the rear room of Grocery Store-1, which he searched while repeatedly asking for more money.

3

    e. At the same time, Perpetrator-2 dragged the Owner by the Owner's arm to behind the counter and demanded more money. Perpetrator-2 then ordered the Owner into the rear room of Grocery Store-1.

    f. After directing both the Owner and the Friend into the rear room of Grocery Store-1, Perpetrator-1 and Perpetrator-2 fled the location on a moped scooter.

    g. At Grocery Store-1, Perpetrator-2 left behind a black baseball cap with a white, round, Brooklyn Nets logo on the front.

  7. Based on surveillance footage from a camera located at Grocery Store-1, I have learned the following:

    a. Perpetrator-2 wore a dark t-shirt with the word "soccer" printed across the front, long denim shorts, white high-top sneakers, and a black baseball cap with a round white logo on the front. A small, black pouch hung from the front left of Perpetrator-2's shorts.

    b. Perpetrator-1 wore a white or light-colored long-sleeved hooded sweatshirt. A few moments after fleeing Grocery Store-1, Perpetrator-1 pulled up to the front of Grocery Store-1 on a black moped scooter with an "8" logo above the front wheel. At that time, Perpetrator-1 was wearing a black, "German-style," open-faced helmet.

    c. Shortly after Perpetrator-1 pulled up to the front of Grocery Store-1, Perpetrator-2 got on the moped and the two perpetrators fled the scene.

<u>Identification of the Perpetrators of the Grocery Store-1 Robbery</u>

  8. I believe that Perpetrator-1 of the Grocery Store-1 robbery that occurred on or about August 7, 2020 is JOSE MARTINEZ, a/k/a "Miguel Martinez," the defendant. The bases for my belief are as follows:

    a. Based on my review of a complaint report filed by MARTINEZ with the NYPD, as well as records from the U.S. Postal Service, I know that MARTINEZ lives in an apartment building located on Driggs Avenue in Brooklyn, New York (the "Driggs Residence").

    b. Based on my review of surveillance footage from a deli-grocery located on the ground floor at the Driggs Residence (the "Driggs Deli-Grocery"), I know that on or about August 29, 2020, an individual ("Individual-1") was inside the Driggs Deli-Grocery wearing a black, "German-style," open-faced helmet matching that worn by Perpetrator-1 during the Grocery Store-1 robbery.  And based on my review of surveillance footage from a camera located at the Driggs Residence, Individual-1 was also seen maneuvering a black moped scooter with an "8" logo above the front wheel, matching that used by Perpetrator-1 and Perpetrator-2 to flee the Grocery Store-1 robbery.

    c. Based on my comparison of Individual-1 to law enforcement photographs of MARTINEZ, as well as the fact that the Driggs Deli-Grocery is located at the address where MARTINEZ is known to reside, I believe that "Individual-1" is MARTINEZ.

    9. I believe that Perpetrator-2 of the Grocery Store-1 robbery that occurred on or about August 7, 2020 is MARIO DE LA ROSA, the defendant.  The bases for my belief are as follows:

    a. Based on my review of NYPD body camera footage, I know that on or about September 4, 2020, DE LA ROSA was arrested while wearing a small, black pouch hanging from the front left side of his pants, which matches the pouch worn by Perpetrator-2 during the robbery of Grocery Store-1, *supra* ¶ 7(a).

    b. From reviewing Facebook records, as well as law enforcement photographs of DE LA ROSA, I know that the Facebook profile of DE LA ROSA contains a photograph of DE LA ROSA wearing a black baseball cap with a white, round, Brooklyn Nets logo matching the cap left behind by Perpetrator-2 at the robbery of Grocery Store-1.

    c. Based on my review of surveillance footage from a camera located at a supermarket on Junius Street in Brooklyn, New York, I know that on or about September 10, 2020, an individual I have identified as DE LA ROSA based on a comparison to law enforcement photographs used a benefit card belonging to DE LA ROSA, while wearing white, high-top sneakers matching those worn by Perpetrator-2 during the robbery of Grocery Store-1 on or about August 7, 2020.

    d. Based on my review of U.S. Postal Service records, parole records for DE LA ROSA, and area maps, I know that DE LA ROSA lives a short distance from the above-referenced supermarket located on Junius Street.

The Cellphone Store Robbery

10. Based on my conversations with other law enforcement officers and my review of NYPD complaint reports, I have learned the following:

    a. On or about Sunday, August 9, 2020, at approximately 1:10 p.m., two men ("Perpetrator-3 and "Perpetrator-4") entered a cellphone store located on Sutter Avenue in Brooklyn, New York (the "Cellphone Store").

    b. Upon entering the Cellphone Store, Perpetrator-3 displayed a firearm, which he pressed against an employee of the Cellphone Store ("Employee-1"), while threatening to kill Employee-1. Carrying a small bag, Perpetrator-4 demanded cellphones. As directed, Employee-1 placed several cellphones from the Cellphone Store inventory into the small bag carried by Perpetrator-4. According to Employee-1, Perpetrator-3 then asked where the money was located, at which point Employee-1 opened the cash register, removed cash, and handed it to Perpetrator-3.

    c. Perpetrator-3 then grabbed a personal backpack belonging to Employee-1 and emptied its contents before re-filling the backpack with more cellphones. Next, Perpetrator-3 ordered Employee-1 to go to the employee bathroom of the Cellphone Store.

    d. Perpetrator-3 and Perpetrator-4 stole approximately 22 cellphones, 29 SIM cards, and two Pintrac Pet Trackers[1] from the Cellphone Store.

11. Based on my review of surveillance footage taken from a camera located at a deli on the corner of Sutter Avenue and Junius Street in Brooklyn, New York (the "Sutter Deli"), approximately 120 feet from the Cellphone Store, I know the following:

    a. At approximately 1:00 p.m. Perpetrator-3 and Perpetrator-4 arrived at the Sutter Deli on a black moped scooter with an "8" logo above the front wheel, parked the scooter on the west side of Junius Street, and then dismounted.

    b. Perpetrator-3 wore a dark t-shirt with the phrase "My Spirit Animal" printed across the front, as well as camouflage shorts, and a black, "German-style," open-faced helmet.

---

[1] Based on internet research I know that a Pintrac Pet Tracker is a GPS device sold by a wireless carrier that allows a pet owner to monitor a pet's location.

6

    c. A short time after Perpetrator-3 and Perpetrator-4 arrived at the Sutter Deli, they were joined outside the Deli by a third individual who took a backpack from Perpetrator-4.

    d. At approximately 1:08 p.m. Perpetrator-3 and Perpetrator-4 left the third individual. Perpetrator-3 and Perpetrator-4 crossed Junius Street and began walking south toward the direction of the Cellphone Store, while the third individual remained on the west side of Junius Street and walked south toward Sutter Avenue.

    e. At approximately 1:12 p.m., Perpetrator-3 and Perpetrator-4, jogging from the direction of the Cellphone Store, mounted the black moped scooter and fled northbound on Junius Street. Perpetrator-4 had a small bag across his chest, as well as a backpack.

<u>Identification of Perpetrator-3 of the Cellphone Store Robbery</u>

   12. I believe that Perpetrator-3 of the Cellphone Store robbery that occurred on or about August 9, 2020 is JOSE MARTINEZ, a/k/a "Miguel Martinez," the defendant. The bases for my belief are as follows:

    a. Based on my review of surveillance footage taken from cameras located at the Cellphone Store and the Sutter Deli, I know that Perpetrator-3 wore a black, "German-style," open-faced helmet matching that worn by MARTINEZ on or about August 29, 2020 inside the Driggs Deli-Grocery, *supra* ¶ 8(b), which is the same helmet worn by Perpetrator-1 during the Grocery Store-1 robbery, *supra* ¶ 7(b).

    b. Based on my review of surveillance footage taken from a camera at the Sutter Deli, I know that Perpetrator-3 arrived at and fled the scene on a black moped scooter with an "8" logo above the front wheel, which matches the scooter maneuvered by MARTINEZ on or about August 29, 2020 outside the Driggs Residence, *supra* ¶ 8(b), as well as the scooter driven by Perpetrator-1 to flee the Grocery Store-1 robbery, *supra* ¶ 7(b).

<u>The Flower Shop Robbery</u>

   13. Based on my conversations with law enforcement officers and my review of NYPD complaint reports, I have learned the following:

7

    a. On or about August 17, 2020, at approximately 6:15 p.m., an employee ("Employee-2") at a flower shop in Queens, New York ("Flower Shop") was emptying water from a flower pot onto the street when a male ("Perpetrator-5") approached Employee-2 and displayed a black firearm.

    b. Perpetrator-5 stated in Spanish, "Give me all the money," forcing Employee-2 into the corner of the Flower Shop. According to Employee-2, Perpetrator-5 spoke only in Spanish throughout the incident.

    c. Perpetrator-5 then stated again, "Give me all the money" and ordered Employee-2 to open Employee-2's backpack. Employee-2 produced approximately $500 from her backpack, which Perpetrator-5 took. After retrieving a cellphone belonging to Employee-2 and throwing it into the trashcan of the Flower Shop, Perpetrator-5 instructed Employee-2 to turn around and not call the police. Perpetrator-5 then fled the Flower Shop on a black moped scooter.

<u>Identification of Perpetrator-5 of the Flower Shop Robbery</u>

    14. I believe that Perpetrator-5 of the Flower Shop robbery that occurred on or about August 17, 2020 is JOSE MARTINEZ, a/k/a "Miguel Martinez," the defendant. The bases for my belief are as follows:

    a. From my review of surveillance footage taken from a camera located at the Flower Shop, I know that Perpetrator-5 wore a black, "German-style," open-faced helmet during the commission of the Flower Shop robbery. That helmet matches the helmet worn by MARTINEZ on or about August 29, 2020 at the Driggs Deli-Grocery, *supra* ¶8(b), as well as the helmet worn by Perpetrator-1 of the Grocery Store-1 robbery, *supra* ¶7(b), and Perpetrator-3 of the Cellphone Store robbery, *supra* ¶11(b).

    b. From my review of surveillance footage taken from a camera located at the Flower Shop, I know that Perpetrator-5 wore a black poncho-style covering during the commission of the robbery.

    c. From my review of surveillance footage taken from a camera located at the Flower Shop, I also know that during the Flower Shop robbery, Perpetrator-5 displayed multiple gold rings on his hands, including on his left pointer finger a large ring with a round face.

    d. From my review of NYPD body camera footage capturing the arrest of MARTINEZ on or about July 25, 2019, I know that at the time of his arrest MARTINEZ was wearing several gold rings on his left hand, including on his left pointer finger a large ring with a round face, matching that worn by Perpetrator-5 during the Flower Shop robbery.

    e. From my review of surveillance footage and still images taken from a deli located on Seneca Avenue in Queens, New York, I know that at approximately 6:05 p.m., a person matching the description of Perpetrator-5, together with an unknown person("Perpetrator-6"), traveled on Seneca Avenue toward Palmetto Street on a moped scooter with an "8" logo above its front wheel, which matches the scooter maneuvered by MARTINEZ on or about August 29, 2020 outside the Driggs Residence, *supra* ¶ 8(b), as well as the scooter driven by Perpetrator-1, *supra* ¶ 7(b), and Perpetrator-3, *supra* ¶ 11(a). Based on my review of an area map, I know that the intersection of Seneca Avenue and Palmetto Street is a short distance from the Flower Shop.

<u>The Grocery Store-2 Robbery</u>

  15. Based on my conversations with law enforcement officers and my review of NYPD complaint reports, I have learned the following:

    a. On or about August 28, 2020, at approximately 8:25 p.m., two men ("Perpetrator-7" and "Perpetrator-8") entered a Grocery Store ("Grocery Store-2") located on Avenue A in New York, New York, and brandished a firearm and Taser, respectively.

    b. According to an employee who was working behind the counter of Grocery Store-2 at that time ("Employee-3"), Perpetrator-7 and Perpetrator-8 pointed both weapons in Employee-3's direction, and Perpetrator-8 directed Employee-3 to give him "all the money." After the perpetrators removed cash from the register, Perpetrator-8 walked Employee-3 to the back of Grocery Store-2, where Perpetrator-8 patted Employee-3 down and removed Employee-3's personal belongings, including Employee-3 cellphone.

  16. From my review of surveillance footage and still images taken from a camera located at Grocery Store-2, I know the following:

    a. At approximately 8:25 p.m., Perpetrator-8 placed cash on the counter of Grocery Store-2, after which Employee-3 reached back to produce a package of cigarettes. As Employee-3 was handing over the package of cigarettes to

Perpetrator-8, Perpetrator-7 walked around the counter pointing a black firearm at Employee-3. Perpetrator-8 then brandished a Taser, which he pointed at Employee-3 from the other side of the counter.

    b. While Employee-3 was crouching behind the counter, Perpetrator-8 reached across the counter to remove cash from the register. At the same time, Perpetrator-7 grabbed at each of Employee-3's ears, as if searching for jewelry.

    c. After removing loose cash from the register and knocking it to the ground, Perpetrator-8 traveled around the counter and removed a banded stack of cash from the register. Perpetrator-7, meanwhile, traveled to the other side of the counter where he continued to point a black firearm at Employee-3.

    d. Perpetrator-7 then removed a watch from the wrist of Employee-3 before dragging Employee-3 by the shirt and leading Employee-3 into the back room of Grocery Store-2.

    e. Perpetrator-7 wore gold rings on each of the fingers of his left hand, as well as a distinctive chain necklace with a hanging charm. Perpetrator-7 also wore a black baseball cap and long denim shorts with a white stripe down the outside of each leg.

    f. Perpetrator-8 wore a grey t-shirt with "Brooklyn" printed across the front, a small, black pouch hanging from the front left of his pants, as well as a New York Yankees baseball hat with a navy brim, a navy logo, and tri-color paneling in navy, white, and grey.

<u>Identification of the Perpetrators of the Grocery Store-2 Robbery</u>

   17. I believe that Perpetrator-7 of the Grocery Store-2 robbery that occurred on or about August 28, 2020 is JOSE MARTINEZ, a/k/a "Miguel Martinez," the defendant. The bases for my belief are as follows:

    a. Based on my review of surveillance footage from the Driggs Deli-Grocery, I know that on or about August 28, 2020, shortly after the Grocery Store-2 robbery, an individual ("Individual-2") arrived at the Driggs Deli-Grocery on a black moped scooter and entered the Deli-Grocery wearing a black baseball cap, long denim shorts with a white stripe down the outside of each leg, gold rings on each of the fingers of his left hand (*i.e.*

wearing the same clothing and jewelry as worn by Perpetrator-7 of the Grocery Store-2 robbery).

        b.   I believe that Individual-2 is MARTINEZ based on the fact that MARTINEZ was wearing several gold rings on his left hand during his arrest by NYPD on July 25, 2019, *supra* ¶ 14(d), as well as the fact that the Driggs Deli-Grocery is located on the ground floor of the Driggs Residence, where MARTINEZ is known to reside.

        c.   Furthermore, based on my review of surveillance footage from the Driggs Deli-Grocery, I know that on or about August 29, 2020 (*i.e.* the day after the Grocery Store-2 robbery), a person believed to be MARTINEZ for reasons already stated, *supra* ¶ 7(b), was inside the Driggs Deli-Grocery wearing a distinctive chain necklace matching that worn by Perpetrator-7 during the Grocery Store-2 robbery.

    18.   I believe that Perpetrator-8 of the Grocery Store-2 robbery that occurred on or about August 28, 2020, is MARIO DE LA ROSA, the defendant. The bases for my belief are as follows:

        a.   Based on my review of NYPD body camera footage, I know that on or about September 4, 2020, DE LA ROSA was arrested while wearing a small, black pouch hanging from the front left of his pants, matching the pouch worn by Perpetrator-8 during the robbery of Grocery Store-2, *supra* ¶ 16(f), as well as the pouch worn by Perpetrator-2 during the Grocery Store-1 robbery, *supra* ¶ 7(a).

        b.   Based on my review of surveillance footage from a camera located at a supermarket on Junius Street in Brooklyn, New York, I know that on or about September 10, 2020, an individual I have identified as DE LA ROSA based on a comparison to law enforcement photographs used a benefit card belonging to DE LA ROSA, *supra* ¶9(c). That individual wore a t-shirt with "Brooklyn" printed across the front, which matches the t-shirt worn by Perpetrator-8 during the Grocery Store-2 robbery.

    WHEREFORE, deponent prays that warrants be issued for the arrests of JOSE MARTINEZ, a/k/a "Miguel Martinez," and MARIO

DE LA ROSA, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

                                             *S/ by the Court with permission*
                                             Detective Steven Saint Hilaire
                                             ATF/NYPD Joint Robbery Task Force

Sworn to me through the transmission
of this Affidavit by reliable electronic
means (telephonic conference), pursuant
to Federal Rules of Criminal Procedure 41(d)(3)
and 4.1 this,

28th day of September, 2020

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

12